# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHENIQUE COATES, | CIVIL ACTION |
| Plaintiff, | |
| | No.: _____ |
| v. | |
| DELAWARE STATE UNIVERSITY, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

Shenique Coates (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Delaware State University (hereinafter referred to as "Defendant") of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. § 2000e *et seq.*). Plaintiff's employment was unlawfully terminated by Defendant, and she suffered damages more fully described and sought herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), because it arises under the laws of the United States and seeks redress for violations of federal laws.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the

standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the District of Delaware.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also duly filed said Charge with the Delaware Department of Labor, Division of Industrial Affairs, Office of Anti-Discrimination ("DDOL"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and duly filing his Charge with the EEOC and the DDOL and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## **PARTIES**

6. The foregoing paragraphs are incorporated here in their entirety as if set forth in full.

7. Plaintiff is an adult individual residing at 213 Cranapple Ln., McDonough, Georgia 30253.

8. Defendant is a privately governed, state-assisted university, located at 1200 North Dupont Highway in Dover, Delaware.

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a female.

12. Plaintiff was hired by Defendant on or about March 14, 2023.

13. During her tenure with Defendant, Plaintiff was employed as a Financial Administrator.

14. At all relevant times herein, Plaintiff was directly supervised by Director of Restricted Funds Accounting – Symone Merritt (hereinafter "Merritt" – Female) and indirectly supervised by Director of Budgets – Aydea Silent (hereinafter "Silent" - Female) and Chief Financial Officer – Anas Ben Addi (hereinafter "Addi" – Male).

15. While employed with Defendant, Plaintiff was subjected to discriminatory treatment based on her gender by Addi.

16. For example, unlike Plaintiff's male colleagues, she was (1) treated in a rude and condescending manner; (2) selectively reprimanded; (3) spoken to very condescendingly; and (4) given additional tasks outside of her job description.

17. Plaintiff was not the only female Addi treated in a discriminatory manner. In fact, Plaintiff's direct supervisor (Merritt) also was discriminated against by Addi based on her gender.

18. Merritt even filed a Title IX complaint and is pursuing her own lawsuit against Defendant under Title VII (for gender discrimination and retaliation).

19. In addition, Plaintiff was informed by Silent that Addi has "issues with women," that there was a "cultural difference" between Plaintiff and Addi, and that she [Silent] was having issues with Addi as well.

20. In or around January of 2024, Plaintiff was a witness to an incident between Merritt and Addi, wherein Addi was extremely rude and aggressive towards Merritt for what seemed to be no logical or legitimate reason, and it made Plaintiff very uncomfortable.

21. Plaintiff later learned that Merritt listed her as a witness in a complaint of gender discrimination that she made against Addi.

22. Because Merritt had listed Plaintiff as a witness to the gender discrimination that she was being subjected to by Addi, Plaintiff was later asked by Silent if she witnessed the aforesaid incident between Merritt and Addi in January 2024 (discussed in Paragraph 20 of this Complaint), to which Plaintiff responded, gave favorable testimony for Merritt, and assisted Merritt's complaint of gender discrimination under Title VII.

23. After providing favorable information in support of Merritt's complaint of gender discrimination, the hostile treatment that Plaintiff was subjected to only got worse.

24. For example, Addi demanded that Plaintiff move from a secure office back to an unsecured cubical in the hallway, which was not conducive to her position and put the financial information she was working with at risk (as well as put herself at risk, due to lack of proper security).

25. Plaintiff advised that she would move from the office area where she was working, provided that Addi could assign her a safe and secure area to work, as she was concerned about exposing sensitive financial information that she worked with and was also concerned for her own safety (because a woman had just been murdered on campus and Plaintiff was being sent to work in an area without any security).

26. Addi completely ignored Plaintiff's requests and continued to subject her to hostility and animosity.

27. Therefore, on or about April 24, 2024, Plaintiff filed a Title IX complaint for gender discrimination against Addi and an interview was conducted by Defendant's Title IX coordinator shortly thereafter, on or about April 29, 2024.

28. On or about May 3, 2024, less than one week after her interview with the Title IX coordinator, Plaintiff was informed that she was being terminated from her employment with Defendant.

29. Present at Plaintiff's termination meeting on May 3, 2024, was Silent and Defendant's Director of Labor Relations and Diversity – Pamela Gresham (hereinafter "Gresham" – Female).

30. Defendant claims that it terminated Plaintiff because she refused a direct order regarding changing her desk location – which is completely pretextual and false.

31. During Plaintiff's termination meeting, Defendant asked Plaintiff for her termination letter back because it originally indicated that she was being demoted instead of terminated. Notably, Merritt was demoted on the same day that Plaintiff was terminated.

32. After handing the revised termination letter back to Plaintiff (which corrected the wording from a demotion to a termination), Defendant's management asked Plaintiff to sign the termination letter, but she refused.

33. Plaintiff thereafter asked what was going to happen to her Title IX complaint now that she was terminated. At this point, Gresham looked at Silent and said "Oh Shit! . . . Can I talk to you [meaning Plaintiff] privately after we conclude this meeting?"

34. Plaintiff responded to Gresham's request to meet privately after the termination meeting by stating that she was not comfortable with doing so (as she had just been terminated) and informed Gresham that she would get an attorney.

35. After Plaintiff's termination, Merritt filed her own Title IX complaint.

36. After Merritt filed her own Title IX complaint (and after several previous complaints of gender discrimination and retaliation were made to Defendant's management and HR), Merritt was also terminated from her job.

37. Based on the foregoing, Plaintiff believes and therefore avers that she was terminated from her employment with Defendant because of her gender, in retaliation for her complaints of gender discrimination, and/or because she was a favorable witness who supported Merritt's complaints of gender discrimination.

## Count I
## Violations of the Title VII
### ([1] Gender Discrimination; [2] Hostile Work Environment; & [3] Retaliation)

38. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

39. Plaintiff is a female.

40. During her employment with Defendant, specifically while under the supervision of Addi, Plaintiff was subjected to a hostile work environment based on her gender and/or complaints of gender discrimination through (1) disparate treatment; (2) discriminatory harassment; and (3) failing to provide her with a safe and secure work area.

41. Plaintiff was not only a witness to and provided favorable testimony in support of Merritt's complaint of gender discrimination, but she also filed her own Title IX complaint for gender discrimination approximately one week before she was terminated from her employment with Defendant.

42. After engaging in protected activity (discussed *supra*), Plaintiff was terminated from her employment with Defendant.

43.     Plaintiff believes and therefore avers that her gender was a motivating or determinative factor in Defendant's decision to terminate her employment.

44.     Plaintiff also believes and therefore avers that she was terminated for being a favorable witness who supported Merritt's complaint of gender discrimination and because she made her own complaints of gender discrimination.

45.     Defendant's aforesaid actions constitute violations of the Title VII.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits that Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

C.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress and/or pain and suffering);

D.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal and state law; and

E.     Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

                                        **LAROSA & ASSOCIATES LLC**

                                        */s/ John M. LaRosa*
                                        JOHN M. LAROSA, ESQ.
                                        Delaware Bar ID No. 4275
                                        1225 King Street, Suite 802
                                        Wilmington, DE 19801-3246
                                        (302) 888-1290
                                        (302) 655-9329 (fax)
                                        JLR@LaRosaLaw.com


                                        **KARPF, KARPF & CERUTTI, P.C.**

                                        */s/ Traci M. Greenberg*
                                        TRACI M. GREENBERG, ESQ.
                                        3331 Street Road
                                        Two Greenwood Square, Suite 128
                                        Bensalem, PA 19020
                                        (215) 639-0801
                                        (215) 639-4970 (fax)
                                        cburke@karpf-law.com

                                        *Pro Hac Vice Motion Pending*

Dated: March 12, 2025